IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| IN RE THALOMID AND REVLIMID ANTITRUST LITIGATION | Lead Docket No. 2:14-cv-06997-KSH-CLW |
|---|---|

PLAINTIFF THE CITY OF PROVIDENCE'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT CELGENE CORPORATION'S MOTION TO
DISMISS PROVIDENCE'S STATE LAW CLAIMS

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS ....................................................................2

STANDARD OF REVIEW ...................................................................3

ARGUMENT ......................................................................................3

I.   Plaintiff's Ability to Pursue Claims of Absent Class Members is an Issue Reserved for Class Certification under Rule 23. ....................................................4

II.  Celgene's Choice of Law Arguments Are Similarly Unavailing......................11

III. Contrary to Defendant's Assertion, Providence Has Adequately Alleged Claims Under Rhode Island Law.............................................................15

   A.  Providence Has Adequately Alleged Claims Arising Under Rhode Island's Antitrust Statute. ....................................................................15

   B.  Providence Has Adequately Alleged Claims Arising Under Rhode Island's Consumer Protection Statute. ...........................................................17

   C.  Providence Has Adequately Alleged A Claim For Unjust Enrichment Under Rhode Island Law. ......................................................................20

IV.  Providence Has Adequately Stated Claims Under The Laws Of The Other States Where It Provided Reimbursement For Thalomid and Revlimid. ................22

   A.  Providence Has Adequately Stated Its Claim Under the FDUTPA. ..............22

   B.  Providence Has Also Adequately Stated Claims Under North Carolina, Kansas and Pennsylvania Law...........................................................26

     i.   North Carolina UDTPA................................................................26

     ii.  Kansas CPA............................................................................29

iii.  Pennsylvania UTPCPL ..................................................................................31

C.  Celgene's Motion to Dismiss Providence's Unjust Enrichment Claims Under Florida, North Carolina and Pennsylvania Law Should Be Denied. ....................32

CONCLUSION ........................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Am. Rockwool, Inc. v. Owens-Corning Fiberglass Corp.,* 640 F. Supp. 1411
(E.D.N.C. 1986) ...................................................................................14

*Amchem Prods. v. Windsor,* 521 U.S. 591(1997) .......................................5

*American Federation of State, County and Municipal Employees, District Council
47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.,*
No. 08-5904, 2010 U.S. Dist. LEXIS 23181
(E.D.Pa. March 11, 2010) ..................................................... 21, 22, 33

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .................................3, 10

*Bouchard v. Price,* 694 A.2d 670 (Sup. Ct. R.I. 1997)............................21

*Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515 (D. Kan. 1995) ...... 30, 31

*CBP Res., Inc. v. SGS Control Servs.,* 394 F. Supp. 2d 733
(M.D.N.C. 2005)...................................................................................26

*Gonzalez v. Pepsico, Inc.,* 489 F. Supp. 2d 1233 (D. Kan. 2007) ..........................29

*In re Buspirone Patent  & Antitrust Litig.,* 185 F. Supp. 2d 363
(S.D.N.Y. 2002).................................................................................5, 6

*In re Canon Cameras Litig.,* No. 05-cv-7233, 2006 U.S. Dist. LEXIS 43233
(S.D.N.Y. June 21, 2006).....................................................................34

*In re DDAVP Indirect Purchaser Antitrust Litig.,* 903 F. Supp. 2d 198
(S.D.N.Y. 2012) .......................................................................... passim

*In re Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098 (N.D.Cal. 2007) ............13

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D.Pa. 2010)............... passim

*In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06-MD-1739, 2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006)......................... 5, 13, 15

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D.Cal. 2007).................................................................................20

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ...........................12

*In re K-Dur Antitrust Litig.*, MDL No. 1419, 2008 U.S. Dist. LEXIS 113310 (D.N.J. March 19, 2008) ....................................................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003) .............................................................................14

*In re Magnesium Oxide Antitrust Litigation*, No. 10-5943, 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011)........................................................9, 10

*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367 (D. Mass. 2013)...............................................................................6

*In re Pool Products Distrib. Market Antitrust Litig.*, 946 F. Supp. 2d 554 (E.D. La. 2013) ......................................................................... 23, 24

*In re Rezulin Prods. Liability Litig.,* 392 F. Supp. 2d 597 (S.D.N.Y. 2005)...........14

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004)......................................................................33

*In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D.Cal. 2008).......... 18, 35

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009) ....... 23, 25, 26

*JES Properties, Inc. v. USA Equestrian, Inc.*, No. 02-cv-1585, 2003 U.S. Dist. LEXIS 20633 (M.D. Fla. Oct. 10, 2003) ............................................24

*JES Properties, Inc. v. USA Equestrian, Inc.*, No. 02-cv-1585, 2005 U.S. Dist. LEXIS 43122 (M.D. Fla. May 9, 2005) .................................................................23

*Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610 (N.C. 1980) ......................28

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514 (E.D.Pa. 2010).................................................................................................34

*Klein v. Gen. Nutrition*, 186 F. 3d 338 (3d Cir. 1999)...............................................8

*Oce Printing Sys, USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1256 (Fla. Ct. App. 2d Dist. 2000.................................................................................26

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d. Cir. 2008) ...........................3

*QSGI v. IBM Global Financing*, No. 11-80880, 2012 U.S. Dist. LEXIS 49601 (S.D. Fla. Mar. 13, 2012).......................................................................................23

*R.I. Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc.*, 99 F. Supp. 2d 174 (D.R.I. 1999) .........................................................................19

*Ramirez v. STI Prepaid*, 44 F. Supp. 2d 496 (D.N.J. 2009) .....................................5

*Rogers v. Bank of Am., N.A.*, No, 13-1333, 2014 U.S. Dist. LEXIS 91594 (D. Kan. July 7, 2014)...........................................................................................30

*Sanchez v. Bank of Am., N.A.*, 14-cv-1142, 2014 U.S. Dist. LEXIS 158139 (D. Kan. Nov. 6, 2014) .........................................................................................30

*Sergeants Benev. Ass'n Health & Welf. Fund v. Sanofi-Aventis U.S. LLP*, No. 08-cv-0179, 2012 U.S. Dist. LEXIS 138790 (E.D.N.Y. Sept. 17, 2012).................14

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205 (E.D.Pa. 2009)................................................................ passim

*United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 14-md-02521, 2014 U.S. Dist. LEXIS 161069 (N.D.Cal Nov. 17, 2014) ....................................................20

*Wilson v. Everbank, N.A.*, No. 14-22264, 2015 U.S. Dist. LEXIS 8315 (S.D.Fla. Jan. 6, 2015) ......................................................................6, 34

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007)......................................8

## STATUTES

73 Pa. Stat. Ann. §§ 201-1 ....................................................................31
Fla. Sta. § 501.204 ..............................................................................23
Fla. Stat. §§ 501.201 ............................................................................22
Kansas Stat. Ann. §§ 50-623....................................................................29
N.C. Gen. Stat. § 75-2.1 .........................................................................27
N.C. Gen. Stat. §§ 75-1 ..........................................................................26
R.I. Gen. Laws § 6-13.1-1........................................................................17
R.I. Gen. Laws § 6-13.1-2........................................................................18
R.I. Gen. Laws § 6-13.1-5.2(a) ............................................................. 17, 18
R.I. Gen. Laws § 6-13.1-5.2(b) .................................................................17
R.I. Gen. Laws § 6-36-1.........................................................................15

## OTHER AUTHORITIES

Kaplan, A Prefatory Note, 10 B. C. Ind. & Com. L. Rev. 497, 497 (1969)..............6
Restatement of Restitution § 1 (1937). ..................................................33

## PRELIMINARY STATEMENT

Pursuant to the Court's March 25, 2015 Order (Dkt. 32) (the "Order"), Plaintiff the City of Providence ("Providence" or "Plaintiff") submits this memorandum of law in opposition to Defendant Celgene Corporation's Motion to Dismiss Providence's State Law Claims filed on April 20, 2015 (the "Supplemental Motion to Dismiss") (Dkt. 35).  Pursuant to the Court's Order, the Supplemental Motion to Dismiss is to be "directed at issues present in the Providence Action that are not present in the International Bricklayers' Action." (Order at p. 5.)  Providence therefore responds herein solely to the arguments raised in the Supplemental Motion to Dismiss.  With respect to all other arguments raised in Defendant Celgene Corporation's Corrected Memorandum of Law in Support of its Motion to Dismiss Class Action Complaint filed on February 25, 2015 (Dkt. 24-1), Providence joins in the Plaintiff's Memorandum of Law in Opposition thereto filed on March 17, 2015 (Dkt. 29).

STATEMENT OF FACTS

Providence is a self-insured health and welfare benefit plan that provides reimbursement for some, or all, of the purchase price of prescription drugs, including Thalomid and Revlimid, for its active and retired public employees and their dependents.  Plaintiff alleges that Celgene has engaged, and continues to engage, in an anticompetitive scheme to delay generic entry into the market for Thalomid and Revlimid.   (Class Action Complaint (Dkt. 1) (hereinafter, "Complt.") ¶ 242.)  Celgene's anticompetitive conduct includes, *inter alia*, fraud on the USPTO, sham litigation (including confidential settlements with anticompetitive effects), baseless Citizen Petitions and abuse of the Thalomid and Revlimid REMS programs.   (Complt. ¶¶ 243-244.)   But for Celgene's anticompetitive conduct, generic versions of these drugs would have entered the market.  (Complt. ¶ 245.)

Providence provided reimbursement for some, or all, of the purchase price of Thalomid and Revlimid for its active and retired public employees and their dependents who reside in and/or purchased Thalomid and Revlimid in Rhode Island, Florida, Kansas, Massachusetts, New Jersey, North Carolina and Pennsylvania.  (Complt. ¶ 14.)  Providence brings this class action on behalf of itself and all others similarly situated third-party payors and consumers against Celgene for injunctive relief and to recover the unlawful overcharge on Revlimid

and Thalomid purchases.  On March 31, 2015, this action was consolidated with *International Union of Bricklayers and Allied Craft Workers Local 1 Health Fund v. Celgene Corporation*, case no. 2:14-cv-06997-KSH-CLW.  The plaintiff in that action purchased and/or provided reimbursement for some, or all, of the purchase price for Thalomid and Revlimid for its members in Massachusetts and Nebraska.

## STANDARD OF REVIEW

To defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d. Cir. 2008) ("stating . . . a claim requires a complaint with enough factual matter (taken as true) to . . . raise a reasonable expectation that discovery will reveal evidence of the required element.").

## ARGUMENT

Celgene's Supplemental Motion to Dismiss can be reduced to three basic arguments.  First, the standing of absent class members should be adjudicated here, at the inception of the case.  Second, the Court should engage in a choice of law analysis that results in a nationwide class pursuing a single claim under Rhode Island law, regardless of the location of the third party payor, the consumer or the transaction.  As explained in Sections I and II, Celgene's arguments are premature at this stage of the proceedings, go against the weight of authority and lead to

3

unreasonable results.  Third, Celgene attacks whether Providence has adequately stated a claim under the laws of the states where it reimbursed its members for their purchases of Thalomid and Revlimid.  For the reasons discussed in Sections III and IV, Providence has stated a claim under each of the relevant statutes. Celgene's Supplemental Motion should therefore be dismissed in its entirety.

I.     Plaintiff's Ability to Pursue Claims of Absent Class Members is an Issue Reserved for Class Certification under Rule 23.

Defendant concedes that Providence has Article III standing to sue under the laws of the states where it resides and where it purchased and/or provided reimbursement for Thalomid or Revlimid.[1]   However, Defendant argues that claims brought on behalf of class members under the laws of other states must be dismissed for lack of standing.[2]   Defendant's argument incorrectly conflates standing with class certification issues and, indeed, is contradicted by the very authority upon which it relies.[3]

As recognized by this Court in *Ramirez v. STI Prepaid*, "the fact that the named Plaintiffs may not have individual standing to allege violations of . . . laws

---

[1] (Supplemental Motion to Dismiss at 5.)

[2] (*Id.*)

[3] This argument is duplicative of the arguments made in Celgene's motion to dismiss (Dkt. 24-1) and was addressed by Plaintiffs in prior briefing (Dkt. 29 at 28-30).  To the extent Celgene reiterates arguments already asserted in the original motion to dismiss (Dkt. 24-1), Providence hereby incorporates and references the counterarguments set forth in Plaintiff's Memorandum of Law in Opposition thereto filed on March 17, 2015 (Dkt. 29), in addition to the counterarguments set forth herein.

in states other than those in which they purchased Defendants' [product] *is immaterial*" at the motion to dismiss stage.   644 F. Supp. 2d 496, 505 (D.N.J. 2009) (emphasis added).   Rather, the issue is one to be resolved at class certification:

> The issue Defendants raise is one of predominance--whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b)(3). . . . *This is an issue to be resolved at the class certification stage of the litigation*. . . . The ability of the named Plaintiffs to adequately represent class plaintiffs in different states and the extent to which common issues of law and fact predominate across the putative class members are factors that will be considered in the class certification phase.[4]

*Id.* (emphasis added). *See also Amchem Prods. v. Windsor,* 521 U.S. 591, 612 (1997) (holding that *class certification issues were "logically antecedent" to any Article III standing issues*) (emphasis added); *see also In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06-MD-1739, 2006 U.S. Dist. LEXIS 78064, *12 (S.D.N.Y. Oct. 25, 2006) (same); *In re Buspirone Patent  & Antitrust Litig.,* 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (same); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 214 (S.D.N.Y. 2012) (same).

This is particularly true where, as here, Plaintiff clearly has standing to bring certain claims on its own behalf and where the named Plaintiff's and absent class members' interests are closely aligned.  *See In re Buspirone*, 185 F. Supp. 2d at

---

[4] *Ramirez*, 644 F. Supp. 2d at 505.

377 (noting that where named plaintiffs clearly have standing to bring at least some claims and the class action raises common issues that would establish liability under a number of different states' laws, "it is appropriate to decide class certification before resolving alleged Article III challenges of the present kind"). *See also, In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013) (denying motion to dismiss the end payors' complaint for lack of standing and explaining, "the named plaintiffs' allegations that they paid or reimbursed others for Nexium, at supracompetitive prices, in seventeen of the twenty-six states which have passed Illinois Brick-repealer statutes . . . is sufficient to establish these requirements of personal injury (overpayment). As the Sixth Circuit has noted, 'once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.'").

Moreover, the dismissal of class members' state law claims at this stage of proceedings would be "highly inefficient" (*Wilson v. Everbank, N.A.*, No. 14-22264, 2015 U.S. Dist. LEXIS 8315, *50-51 (S.D.Fla. Jan. 6, 2015)) and would undermine the purposes behind the class action vehicle by, *inter alia,* increasing the number of lawsuits that must be filed in order to recover for the harm caused to class members as a result of Defendant's anticompetitive conduct. *See* Kaplan, A Prefatory Note, 10 B. C. Ind. & Com. L. Rev. 497, 497 (1969) ("The entire

reconstruction of the Rule bespoke an intention to promote more vigorously than before the dual missions of the class-action device:  (1) to reduce units of litigation by bringing under one umbrella what might otherwise be many separate but duplicating actions; (2) even at the expense of increasing litigation, to provide means of vindicating the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.").

Despite the foregoing authority, Defendant asserts that claims brought on behalf of class members under the laws of other states must be dismissed for lack of standing.[5]  In support of its argument, Celgene relies in part upon *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D.Pa. 2010).[6]  However, the decision directly *refutes* Defendant's position.  There, the court held that the question of who will comprise the class (and hence what claims should be permitted to proceed) is a class certification consideration that is premature at the motion to dismiss stage:

> Defendant argues in its Motion to Dismiss that Plaintiffs may not represent a nationwide class. *This argument is premature*; the question of who will comprise the proposed class (*i.e. whom named plaintiffs may represent*) *should be determined at class certification*.  Further, choice-of-law issues may be determined at or after class certification . . . .  In addition, class certification is logically antecedent to a determination of the standing of proposed class members in certain states. . . . Defendant's motion is therefore denied without prejudice.

---

[5] (Supplemental Motion to Dismiss at 5.)

[6] (Supplemental Motion to Dismiss at 6.)

7

*Flonase*, 692 F. Supp. 2d at 534 (emphasis added) (internal citations omitted).

Other cases relied upon by Celgene are inapposite.  For example, two of the cases cited by Defendant for the proposition that claims under other states' laws must be dismissed for lack of standing are securities fraud cases in which the plaintiff sought to recover for allegedly false and misleading statements that occurred *after* the plaintiff purchased its shares.  *See Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) and *Klein v. Gen. Nutrition*, 186 F. 3d 338 (3d Cir. 1999).

Similarly, in *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205 (E.D.Pa. 2009), the court did not actually address the claims of absent class members.  Instead, the defendant moved for judgment on the pleadings on the basis that the plaintiffs could not state a cause of action under the laws of their respective home states.  *Id.* at 208 ("Before the Court is defendants' motion for judgment on the pleadings (Docket # 221), in which they assert that because plaintiffs cannot state a cause of action *under the laws of their respective home states*, their claims must be dismissed.").  Although the court did not analyze absent class members' claims, it did address the same narrow choice of law analysis advocated by Celgene in this litigation (*i.e.*, the application of a single state's law to all class members' claims), which argument is addressed in detail in

8

Section II, *infra*.   With respect to that issue, the court clearly stated its disagreement therewith:

> I find that the theory recognizing a cause of action only in those states where the economic impact of the overcharge is felt is unduly narrow. I adopt the view that a plan's claim arises where the overcharge occurs, and recognize that each plan may have a cause of action in multiple states.

*Id*. at 213; *see also, id*. at 211, n. 12 ("Given the fact that the alleged injury occurred in each of the fifty states, and given each state's strong interest in protecting its own consumers. . . it is clear . . . that the law of a particular state will govern any overcharge injury arising in that state.").

The only case from *this* District that the Defendant relies upon for the dismissal of absent class members' claims that is on point is *In re Magnesium Oxide Antitrust Litigation*, No. 10-5943, 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011), a decision that was designated by Judge Debevoise as not for publication.  There, the court recognized that this District Court and the Supreme Court have previously determined that class certification is logically antecedent to standing issues related to absent class members.  *See Magnesium,* 2011 U.S. Dist. LEXIS 121373, at *36; *see also id.* at *31 ("*Courts, including this one, have held that the fact that the named Plaintiffs may not have individual standing to allege violations of . . . laws in states other than those in which they purchased Defendants' [product] is immaterial* [because] [t]he issue . . . is one of

9

predominance--whether questions of law or fact common to all class members predominate over any questions affecting only individual members.") (internal quotations omitted) (emphasis added). The *Magnesium* Court nevertheless extinguished absent class members' claims at the motion to dismiss phase reasoning that allowing the claims to go forward would allow plaintiffs to bring a class action complaint under the laws of multiple states without having to allege "concrete, particularized injuries" related to those states, thus subjecting defendants to nationwide discovery without a valid basis.   *Id.* at *37-38. Respectfully, the court's rationale does not withstand scrutiny.

First, the complaint does in fact "allege concrete, particularized injuries relating to" the subject states, namely that class members purchased or provided reimbursement for Thalomid and Revlimid in the identified states at artificially inflated prices as a result of Defendant's anticompetitive scheme to exclude generic entry.  (Complt. ¶¶ 14, 253, 261-262, 306); *see also, Twombly*, 550 U.S. at 570 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").   Any further particularization of injuries is a question of damages, which is clearly premature at the motion to dismiss phase.

Second, arguments regarding the scope of discovery fail to acknowledge that the focus of this litigation is quite squarely on the *Defendant's* – not Providence's

– conduct, which operated to exclude the availability of generic equivalents for all consumers and third party payors in the United States.   Moreover, Providence alleges a claim for injunctive relief under the Sherman Act on behalf of a *nationwide* class.   Thus, even if specific information regarding each individual class member were relevant at this stage of the proceedings, the litigation is already "nationwide" in scope.

For the foregoing reasons, Plaintiff submits that the rationale of this Court's decision in *Ramirez* and in the other decisions discussed herein (*supra* at 4-7) provide a compelling basis for reserving issues regarding Plaintiff's ability to pursue claims on behalf of absent class members for class certification, which basis is not overcome by the reasoning of *Magnesium*.   Plaintiff, therefore, requests that the Defendant's motion to dismiss the state law claims of absent class members be denied.

II.    Celgene's Choice of Law Arguments Are Similarly Unavailing.

As noted, Celgene concedes that Providence has Article III standing in the states where it resides and where it purchased or provided reimbursement for Thalomid and Revlimid.[7]   However, Celgene argues that New Jersey choice of law

---

[7] *See also, Flonase*, 692 F. Supp. 2d at 532-533 ("each named plaintiff has standing to bring a claim under the laws of the states where they are located, and where they purchased Flonase or reimbursed their members for Flonase purchases."); *see also Sheet Metal Workers,* 263 F.R.D. at 213 (same).

principles operate to extinguish all claims except for claims under Rhode Island law.[8]

The primary case on which Defendant relies for this proposition is *In re K-Dur Antitrust Litig.*, MDL No. 1419, 2008 U.S. Dist. LEXIS 113310 (D.N.J. March 19, 2008). However, the cited decision was an opinion on a motion for summary judgment and therefore supports *Plaintiff's* position that choice of law considerations are premature at this stage of the proceedings. In fact, in a previous decision on a motion to dismiss *in the same case*, the Court rejected defendants' standing arguments, stating that "*it would be inefficient to determine under which state laws the Indirect Purchasers have viable claims before first deciding the class certification and choice of law issues.*" *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 542 (D.N.J. 2004) (emphasis added).

Further, in the *K-Dur* summary judgment decision, the court specifically noted that, "although [indirect purchaser] Plaintiffs generally have argued that a [third party payor's] claims are governed by the law of the state where its members' purchases are made, *Plaintiffs have not identified which states' laws – other than New York – may potentially be applicable.*" *In re K-Dur Antitrust Litig.,* 2008 U.S. Dist. LEXIS 113310, at *25, n. 12. Where, as here, the parties are at the motion to dismiss phase, and Plaintiff has clearly delineated the

---

[8] (Supplemental Motion to Dismiss at 5.)

applicable state laws at issue (*see* Complt. ¶¶ 279 -296), a choice of law analysis is premature and otherwise inappropriate. *See In re Grand Theft Auto.,* 2006 U.S. Dist. LEXIS 78064, at *11, n. 3 ("a detailed analysis of choice of law and the similarity of applicable laws would be premature at this point, and is better considered after these issues have been developed in conjunction with class certification") (citation omitted).

In further support of its choice of law analysis, Celgene cites to its original motion to dismiss in this consolidated action (Dkt. 24-1 at 21-24), which includes five additional case citations. Yet, none of these additional cases actually supports the stated proposition. For example, in *In re Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098 (N.D.Cal. 2007), there were no allegations that any of the funds paid for the drug at issue outside of their respective home states.[9] Hence, the point at issue, *i.e.*, whether to apply the law of the plaintiff's home state to the exclusion

---

[9] *See In re Ditropan XL Antitrust Litig.*, No. 06-md-01761-JSW (N.D.Cal.), Defendants' Notice of Motion and Motion To Partially Dismiss The Direct And Indirect Purchaser Actions; Memorandum Of Authorities In Support (Dkt. No. 33 at 11) ("The named Indirect Purchaser Plaintiffs improperly claim antitrust violations under the laws of 27 states and the District of Columbia, ***despite alleging that they reside and purchased Ditropan XL in no more than four of those jurisdictions***: New Jersey (Teamsters' Local No. 35 Health Plans), New York (Local 28 Sheet Metal Workers Fund), North Dakota (City of Fargo Health Trust Fund), and Tennessee (Plumber's & Pipefitters).""). (emphasis added). *See also In re Ditropan*, 529 F. Supp. 2d at 1107 ("Indirect Purchaser Plaintiffs do not assert there is basis to confer standing on them to bring claims based on the state law of states in which they do not reside, but rather, argue that the determination of standing is premature prior to class certification.").

of the laws of the states where the transaction(s) occurred, was not before the court.  Similarly, in *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003), the *plaintiff* was the party advocating that the law of its home state (Illinois) should apply to its purchases in New Mexico and Texas (*id.* at 47), presumably because Texas does not permit indirect purchaser standing.

The remaining cases relied upon by Defendant were at the summary judgment stage and stand in stark contrast to the current procedural posture of this case.  For example, in *Am. Rockwool, Inc. v. Owens-Corning Fiberglass Corp.,* the court specifically noted that:

> After certain preliminary motions were resolved, *broad discovery* was undertaken by both sides. This discovery included interrogatories, production and review of voluminous business records, and the depositions of numerous party and non-party witnesses. The *discovery in this case has been thorough and exhaustive*. Accordingly, the *extensive factual record* on which plaintiff's claims and defendant's counterclaim are premised has been *fully developed*. The parties have filed cross-motions for summary judgment and have filed extensive briefs in support thereof. In addition, the court heard *oral argument on these motions for two days* -- January 9-10, 1986.  The motions are ripe for disposition, and the court enters this order in response thereto.

640 F. Supp. 1411, 1429, n. 8 (E.D.N.C. 1986) (emphasis added).  *See also In re Rezulin Prods. Liability Litig.,* 392 F. Supp. 2d 597, 611 and n. 85 (S.D.N.Y. 2005) (summary judgment);  *Sergeants Benev. Ass'n Health & Welf. Fund v. Sanofi-Aventis U.S. LLP*, No. 08-cv-0179, 2012 U.S. Dist. LEXIS 138790 (E.D.N.Y. Sept. 17, 2012) (same).

As Defendant's own authority confirms, a detailed choice of law analysis is premature at this stage of the proceedings and is better considered in conjunction with class certification. *See In re Grand Theft Auto.,* 2006 U.S. Dist. LEXIS 78064, at *11, n. 3; *see also, Flonase,* 692 F. Supp. 2d at 534 ("choice-of-law issues may be determined at or after class certification.").

III.   Contrary to Defendant's Assertion, Providence Has Adequately Alleged Claims Under Rhode Island Law.

    A. <u>Providence Has Adequately Alleged Claims Arising Under Rhode Island's Antitrust Statute.</u>

Plaintiff does not dispute that the July 15, 2013 amendment to Rhode Island's antitrust statute (R.I. Gen. Laws § 6-36-1, *et seq.*) allowing indirect purchaser standing does not apply retroactively. However, Celgene's assertion that Providence fails to state a claim under the statute because none of the alleged misconduct occurred after this date strains credulity. Indeed, Celgene's own motion to dismiss (Dkt. No. 24-1) references its ongoing attempts to block generic entry through the assertion of the fraudulently procured distribution patents. For example, Celgene cites to litigation that it filed against Lannett Holdings on January 30, <u>2015</u> (*Celgene Corporation v. Lannett Holdings Inc.,* No. 2:15-cv-00697 (SDW) (SCM) (D.N.J.)). (Dkt. 24-1 at 6, 9.) The complaint in that action states, "This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. §100, et seq., arising from Lannett's filing of an

Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration ("FDA") seeking approval to commercially market a generic version of Celgene's THALOMID® drug product" and requests "[p]reliminary and permanent injunctions enjoining Lannett and its officers, agents, attorneys and employees, and those acting in privity or concert with them, from making, using, selling, offering to sell, or importing into the United States Lannett's" thalidomide capsules.[10]

Similarly, in its reply brief in further support of its Motion to Dismiss the Class Action Complaint,[11] Celgene touts an agreement that it reached with another generic competitor, Natco Pharma Ltd. ("Natco"), in the matter of *Celgene Corp. v. Natco Pharma Ltd.,* 2:10-cv-05197 (D.N.J.), pursuant to which Natco will cease its attempts to gain approval for a generic version of Revlimid. The stipulation, filed with the Court on March 26, 2015, does not reveal the terms under which the parties reached an agreement to settle this portion of their dispute, which has been the subject of vigorous litigation over the previous five years.

In addition, the Complaint alleges an ongoing scheme to preclude generic entry and describes numerous specific acts in furtherance thereof that post-date the July 15, 2013 amendment. (*See, e.g.,* Complt. ¶¶ 62, 193, 241.) As a result of

---

[10] *Celgene Corporation v. Lannett Holdings Inc.,* No. 2:15-cv-00697 (SDW)(SCM) (D.N.J.), Complaint at ¶ 1 and p. 29, paragraph (D).
[11] (Dkt. 31 at 6.)

Celgene's ongoing anticompetitive scheme, there is still, to this day, no generic equivalent of Thalomid or Revlimid on the market.   Celgene's arguments regarding the dismissal of Providence's claims under the Rhode Island Antitrust Statute on the basis that none of the alleged misconduct occurred after July 15, 2013 should, therefore, be summarily dismissed.

      B.  <u>Providence Has Adequately Alleged Claims Arising Under Rhode<br>Island's Consumer Protection Statute.</u>

Rhode Island's Deceptive Trade Practices Act broadly defines "person" to mean "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and *any other legal entity*."  R.I. Gen. Laws § 6-13.1-1.  The statute, which specifically permits class action claims,[12] further provides that:

> Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action . . . .[13]

Despite the plain language of the statute, Celgene argues that Plaintiff has not adequately alleged a claim under Rhode Island's Deceptive Trade Practices Act because: (i) it did not "purchase" the drugs at issue, instead it provided *reimbursements* for plan members' purchases; and (ii) Providence did not obtain

---

[12] R.I. Gen. Laws § 6-13.1-5.2(b).
[13] R.I. Gen. Laws § 6-13.1-5.2(a).

Thalomid or Revlimid for its own use.[14]

Celgene provides no support for its restrictive interpretation of the term "purchase," which is at odds with the statute's reference to providing a means of recovery for "*any ascertainable loss* of money or property, real or personal." R.I. Gen. Laws § 6-13.1-5.2(a) (emphasis added). Plaintiff respectfully submits that such a literal reading of the term "purchase" would undermine the purpose of the statute, which is to provide a means of recovery for "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws §6-13.1-2.

Secondly, the statute does not contain any language to suggest that the entity that purchases the good must be the one to use it. In fact, the very case upon which Defendant relies recognizes that purchases by a business entity may be for personal, family or household use. *See In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D.Cal. 2008). In the *TFT-LCD* case, the issue was whether a business entity's purchases of Thin Film Transistor Liquid Crystal Display panels and products could be "primarily for personal, family or household purposes." *Id.* at 1113. It would seem logical to assume that the purchase of component parts by a business would not be for personal use, yet even under those facts the court allowed the plaintiff leave to amend to add such a claim. *Id.* at 1130 ("because

---

[14] (Supplemental Motion to Dismiss at 12-13.)

there may be unusual circumstances under which a business entity may be able to allege that its purchases were primarily for personal, family or household purposes, the Court will not preclude plaintiffs from amending the complaint to allege such a claim on behalf of business entities."). Here, in contrast, the product at issue is a cancer treatment drug that is being purchased by a health and welfare benefit plan for its members, a use that is quite clearly personal in nature.

The alternate case upon which Celgene relies, *R.I. Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc.*, 99 F. Supp. 2d 174 (D.R.I. 1999), is also unpersuasive. There, plaintiff alleged that the defendant made fraudulent misrepresentations that rendered the plaintiff "unable to make intelligent decisions about the management of its resources." *Id.* at 180. Not surprisingly, the court held that "[t]he Fund has not alleged, nor do the facts suggest, that it was a purchaser or lessee of any of Defendants' goods or services that were intended to be used primarily for personal, family, or household purposes." *Id.* at 189. The case stands in contrast to the facts alleged here and does not provide a valid basis for the dismissal of Plaintiff's claim under the Rhode Island Deceptive Trade Practices Act.

Finally, Celgene alleges that Plaintiff's claim under Rhode Island's Deceptive Trade Practices Act and its Unjust Enrichment claim under Rhode Island law (discussed in more detail below) should be dismissed because "[c]ourts

have repeatedly rejected attempts to plead around Rhode Island's bar on indirect purchaser antitrust claims by repackaging the claims under other Rhode Island statutes."[15]  The cases cited by Celgene either predate the implementation of Rhode Island's indirect purchaser statute (*see In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D.Cal. 2007) and *In re DDAVP*, 903 F. Supp. 2d 198) or pertain to conduct that occurred before the implementation date (*see United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 14-md-02521, 2014 U.S. Dist. LEXIS 161069, *109 (N.D.Cal Nov. 17, 2014)).  As discussed in Section III.A, Defendant's anticompetitive scheme to exclude generic Thalomid and Revlimid is ongoing and marked by numerous acts in furtherance thereof occurring after the July 15, 2013 implementation date; the referenced cases are therefore irrelevant.  Celgene's motion to dismiss the claims under Rhode Island's Deceptive Practices Act should therefore be denied.

    C. <u>Providence Has Adequately Alleged A Claim For Unjust Enrichment Under Rhode Island Law.</u>

Celgene alleges that Providence never "made a payment *to Celgene*" and thus Providence "has not conferred a direct benefit on the defendant."[16]  In support of this proposition, Celgene cites to a case in which plaintiffs brought suit against a

---

[15] (Supplemental Motion to Dismiss at 11-12.)
[16] (Supplemental Motion to Dismiss at 13.)

murderer to recover any "profits that plaintiffs anticipate defendant might obtain by selling the rights to his story at some unspecified time in the future." *Bouchard v. Price,* 694 A.2d 670, 673 (Sup. Ct. R.I. 1997). In addition, Defendant cites to an Eastern District of Michigan case for the proposition that Providence, as an indirect purchaser, has not conferred a direct benefit on Defendant.[17] However, district courts from within this Circuit have held to the contrary that third party payors who provide reimbursement for a drug have conferred a benefit on the drug manufacturer sufficient to state a claim for unjust enrichment. *See, e.g., American Federation of State, County and Municipal Employees, District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 08-5904, 2010 U.S. Dist. LEXIS 23181 (E.D.Pa. March 11, 2010) (denying motion to dismiss plaintiffs' unjust enrichment claims). As the court explained in *American Federation*:

> Plaintiffs directly paid for or reimbursed the purchase costs of fentanyl patches on behalf their members. The benefit in this case is not remote or incidental; rather, *the benefit (the amount paid by Plaintiffs to Defendants for defective fentanyl patches) is direct and measurable.*
>
> Plaintiffs' Complaint alleges that Defendants "reaped substantial profits from the sale of defective fentanyl patches," and that "Defendants' profits would have been reduced, but for their wrongful and unlawful conduct." Otherwise stated, Plaintiffs pled that they conferred a monetary benefit to Defendants, that Defendants appreciated that benefit, and that the Defendants retained the benefit

---

[17] (*Id.*)

under inequitable circumstances. The Court finds that these factual allegations, if taken as true, sufficiently plead a claim of unjust enrichment.

2010 U.S. Dist. LEXIS 23181, at *25-26.  Here, Providence similarly reimbursed its members for their purchases of Thalomid and Revlimid. Moreover, the Complaint alleges, *inter alia*, that "Defendant has unjustly benefited from reaping monopoly profits on its sales of Thalomid and Revlimid resulting from the unlawful and inequitable acts alleged throughout this Complaint."  (Complt. ¶ 303.)  Thus, Providence has adequately alleged a claim for unjust enrichment under Rhode Island law.

IV.   Providence Has Adequately Stated Claims Under The Laws Of The Other States Where It Provided Reimbursement For Thalomid and Revlimid.

A. Providence Has Adequately Stated Its Claim Under the FDUTPA.

Providence has alleged claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.,* referred to herein as "FDUPTA."  Celgene challenges these claims on five bases, each of which fails for the reasons discussed below.

First, Celgene argues that Florida law prohibits indirect purchaser claims under the state's antitrust statute.  Celgene's argument misconstrues Plaintiff's monopolization and attempted monopolization claims, which were brought under the FDUTPA.  It is well recognized that, "[d]espite the Florida courts' interpretation of the state's antitrust law as prohibiting indirect purchaser actions,

22

indirect purchaser plaintiffs may still pursue claims under the FDUTPA." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 161 (E.D. Pa. 2009); *see also, In re Pool Products Distrib. Market Antitrust Litig.*, 946 F. Supp. 2d 554, 568-569 (E.D. La. 2013) (noting that the "Court agrees (and Defendants do not contest) that indirect plaintiffs are not barred from bringing suit by the standing rule of *Illinois Brick*"). Thus, it is clear that Providence has standing to assert its claims under the FDUTPA.

Celgene's second argument builds on its (erroneous) first argument, asserting that because a (theoretical) antitrust claim would fail, so must Plaintiff's FDUPTA claim. However, the FDUTPA expressly declares that unfair methods of competition are unlawful. Fla. Sta. § 501.204. As Providence's complaint adequately alleged a claim for monopolization, it has sufficiently stated a claim for violation of FDUTPA. *See, e.g., In re Pool Products*, 946 F. Supp. 2d at 569-570 (denying motion to dismiss a "FDUTPA claim based on unfair methods of competition"). Moreover, the cases relied upon by Celgene are inapposite. *See QSGI v. IBM Global Financing*, No. 11-80880, 2012 U.S. Dist. LEXIS 49601 (S.D. Fla. Mar. 13, 2012) (no antitrust injury where the harm was to an individual competitor rather than "harm to competition in general") and *JES Properties, Inc. v. USA Equestrian, Inc.*, No. 02-cv-1585, 2005 U.S. Dist. LEXIS 43122 (M.D. Fla. May 9, 2005) (plaintiffs failed to establish a violation of the antitrust laws and

conceded that "their FDUTPA claims 'survive' or 'fall' with their antitrust claims.").[18]

Third, Celgene argues that Providence's FDUTPA claims must be pled with particularity in accordance with Rule 9(b).[19] (Supplemental Motion to Dismiss at 18-19.) The particularity requirement is inapplicable where a plaintiff's claim is premised on antitrust violations or unfair conduct, including unfair methods of competition. *In re Pool Products*, 946 F. Supp. 2d at 569 (distinguishing between the pleading standard for FDUTPA claims based on "unfair methods of competition and practices" and those "based on fraud"). Moreover, Providence's FDUTPA claims survive Celgene's motion to dismiss even if evaluated under a heightened pleading standard, as Plaintiff's 98-page Complaint delineates the specific actions undertaken by Providence in furtherance of its anticompetitive scheme to exclude generic entry into the markets for Thalomid and Revlimid. (*See, e.g.*, Complt. ¶¶ 68-105 (detailing specific instances in which Celgene abused its REMS programs to preclude generic manufacturers from performing necessary

---

[18] In fact, at the motion to dismiss phase, the court in *JES Properties*, refused to dismiss the plaintiffs' antitrust and FDUTPA claims. *JES Properties, Inc. v. USA Equestrian, Inc.*, No. 02-cv-1585, 2003 U.S. Dist. LEXIS 20633, *30-31 (M.D. Fla. Oct. 10, 2003).

[19] In its supplemental motion to dismiss, Defendant reiterates the preemption arguments, as well as its arguments regarding causation and class certification issues. (Supplemental Motion to Dismiss at 19-20, 25.) As noted in footnote 3 Providence incorporates and references the counterarguments set forth in the Opposition brief filed on March 17, 2015 (Dkt. 29) and therefore does not reiterate the counterarguments regarding these issues herein.

bioequivalence testing); 106-120 (explaining how Celgene obtained the Distribution Method Patents through fraud on the PTO); 190-219 (detailing specific instances in which Celgene filed sham patent litigation or fraudulent Citizens Petitions with the FDA in order to unlawfully exclude generic competition; 239-241 (describing the anticompetitive settlements Celgene entered into in further support of its efforts to delay generic entry).)  *Cf. In re DDAVP*, 903 F. Supp. 2d at 221-29 (finding that an allegation of a fraudulent Citizens Petition submitted to the FDA for the purpose of delay was sufficient to state a claim under the FDUTPA).

Fourth, Celgene incorrectly seeks dismissal of Providence's FDUTPA claims on the grounds that Florida only has a tangential connection to Celgene's conduct.  (Supplemental Motion to Dismiss at 21-22.)  Here, Plaintiff has alleged that it provided reimbursement for Thalomid and Revlimid purchases occurring in Florida.  Where "the [] complaint alleges that certain of the named plaintiffs were injured in part through reimbursements for purchases of overpriced drugs sold in the state of Florida. . . .[t]his suffices to state a claim under the FDUTPA." *In re Wellbutrin XL*, 260 F.R.D. at 162.  *See also*, *In re Flonase*, 692 F. Supp. 2d at 538 (rejecting the reasoning of *Millennium* and finding that "Plaintiffs allege some injury in the state of Florida, even if not all of the offending conduct allegedly took place in Florida.  This is sufficient to state a claim under the FDUTPA.").  The

case law cited by Defendant for the contrary position is unpersuasive.  For example, in *Oce Printing Sys, USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1256 (Fla. Ct. App. 2d Dist. 2000), the court's concern was with the certification of a nationwide class under Florida law.  *See In re Wellbutrin XL*, 260 F.R.D. at 161 ("The Court holds that the FDUTPA does not prevent claims by out-of-state plaintiffs.").  Moreover, consideration of the sufficiency of the connection between Celgene's conduct and the state of Florida is a fact question that is inappropriate for resolution at the motion to dismiss stage.

B. <u>Providence Has Also Adequately Stated Claims Under North Carolina, Kansas and Pennsylvania Law.</u>

i. *North Carolina UDTPA*

 Celgene incorrectly argues that Plaintiff's claim under the North Carolina Unfair and Deceptive Trade Practice Act, N.C. Gen. Stat. §§ 75-1, *et seq.* (referred to herein as "NCUDTPA") must be dismissed for failure to allege deceptive acts or practices with particularity.  (Supplemental Motion to Dismiss. at 18-19.) However, at least one North Carolina court has declined "to extend Rule 9(b)'s coverage" to claims brought under the NCUDTPA.  *CBP Res., Inc. v. SGS Control Servs.*, 394 F. Supp. 2d 733, 739 (M.D.N.C. 2005) (noting that the "rationales for the heightened pleading standard in cases of fraud or mistake do not equally apply to deceptive trade practices" and that the "elements required to be proved for fraud claims are dissimilar from those required" under NCUDTPA).

26

However, even if a heightened pleading standard were to apply here, Providence's Complaint, spanning nearly 100 pages, delineates the specific actions undertaken by Celgene in furtherance of its anticompetitive scheme to exclude generic entry into the markets for Thalomid and Revlimid.  (Complt. ¶¶ 68-105 (detailing specific instances in which Celgene abused its REMS programs to preclude generic manufacturers from performing necessary bioequivalence testing); 106-120 (explaining how Celgene obtained the Distribution Method Patents through fraud on the PTO); 190-219 (detailing specific instances in which Celgene filed sham patent litigation or fraudulent Citizens Petitions with the FDA in order to unlawfully exclude generic competition); 239-241 (describing the anticompetitive settlements Celgene entered into in further support of its efforts to delay generic entry.)  Thus, Providence respectfully submits that it has successfully stated a claim under the NCUDTPA and Celgene's motion to dismiss that claim should therefore be denied.

Celgene also asserts that Plaintiff has failed to allege an actionable "deceptive practice" and failed to allege a practice that is "unfair."[20]  With respect to the first argument, North Carolina law explicitly provides that "[i]t is unlawful for any person to monopolize…any part of trade or commerce in the state of North Carolina."  N.C. Gen. Stat. § 75-2.1; *see also*, *In re DDAVP*, 903 F. Supp. 2d at

---

[20] (Supplemental Motion to Dismiss at 19.)

231 (denying defendants motion to dismiss indirect purchasers' NCUDTPA claim where plaintiffs alleged monopolization and the goods at issue were brought into North Carolina for sale).  Here, Providence has adequately alleged that Celgene engaged in anticompetitive conduct and monopolized the market for Thalomid and Revlimid. (Complt. ¶¶ 68-105 (detailing specific instances in which Celgene abused its REMS programs to preclude generic manufacturers from performing necessary bioequivalence testing); 106-120 (explaining how Celgene obtained the Distribution Method Patents through fraud on the PTO); 190-219 (detailing specific instances in which Celgene filed sham patent litigation or fraudulent Citizens Petitions with the FDA in order to unlawfully exclude generic competition); 239-241 (describing the anticompetitive settlements Celgene entered into in further support of its efforts to delay generic entry.)

With respect to Celgene's second argument, "unfair" conduct has been defined as conduct that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 621 (N.C. 1980) (overruled on other grounds).  Contrary to Defendant's assertions, Providence has alleged that Celgene engaged in a wide array of unfair conduct that harmed third party payors, including fraud on the USPTO, sham litigation (including confidential settlements with anticompetitive effects), baseless Citizen Petitions and abuse of the Thalomid

28

and Revlimid REMS programs, all of which lead to Celgene's monopoly power and corresponding ability to charge supracompetitive prices. (Complt. ¶¶ 68-105, 106-120, 190-219, 239-241; Dkt. 29 at 36.) Celgene's motion to dismiss should therefore be denied.

### ii. Kansas CPA

Celgene repeats similarly unavailing arguments as to Providence's claim under the Kansas Consumer Protection Act, Kansas Stat. Ann. §§ 50-623, *et seq.* (referred to herein as "KCPA"). Specifically, Celgene asserts that Kansas courts have declined to extend the KCPA to claims alleging antitrust violations. On the contrary, courts have found that the KCPA should be liberally construed in order to achieve its stated purpose of protecting consumers. *E.g., Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1244 (D. Kan. 2007). Specifically, the statute states that "[t]his act should be construed liberally" to promote its purposes, including "to protect consumers from suppliers who commit deceptive and unconscionable practices." Kansas Stat. Ann. § 50-623. Here, Providence pled that Celgene engaged in numerous unconscionable practices, including abusing its REMS programs (*see* Complt. ¶¶ 68-105), obtaining Distribution Method Patents through fraud on the PTO in order to prolong its illegal monopoly over the markets for Thalomid and Revlimid (*see* Complt. ¶¶ 106-120), filing sham patent litigation or fraudulent Citizens Petitions with the FDA in order to prolong its monopoly and

prevent entry into the market by generic competitors (*see* Complt. ¶¶ 190-219), and entering into anticompetitive settlements to further delay generic entry (*see* Complt. ¶¶ 239-241). These allegations are sufficient to plead a claim under the KCPA and, thus, should not be dismissed.

Moreover, a claim under the state's consumer protection statute for unconscionable and anticompetitive conduct is not subject to a heightened pleading requirement, as Celgene suggests. *See Sanchez v. Bank of Am., N.A.*, 14-cv-1142, 2014 U.S. Dist. LEXIS 158139, *14-16 (D. Kan. Nov. 6, 2014) (differentiating between deceptive acts or practices and unconscionable acts or practices and concluding that, even when evaluating allegedly deceptive conduct the plaintiff's claim "need not be pleaded with particularity"); *Rogers v. Bank of Am., N.A.*, No, 13-1333, 2014 U.S. Dist. LEXIS 91594, *6-8 (D. Kan. July 7, 2014) (noting that, even where KCPA allegations sound in fraud, "there are other key differences between plaintiff's KCPA claims and fraud claims that justify a lower pleading standard here"). Celgene's contrary authority, *Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515 (D. Kan. 1995), involved an alleged deceptive sales practices regarding cigarettes which led to the plaintiff's suffering from vascular disease that resulted in the amputation of his legs. In that case, the court agreed with the defendant that "plaintiff's KCPA claim, which is based on omissions and concealment of material facts, fails because it is not pled with particularity." *Id.* at

1524.   Here, Providence's claims are predicated upon Celgene's unconscionable and anticompetitive conduct that led to its monopoly power and corresponding ability to charge supracompetitive prices and reap monopoly profits.   For these reasons, Celgene's motion to dismiss Providence's KCPA claim should be denied. Plaintiff is not pursuing its claim under the KRTA.

### iii. Pennsylvania UTPCPL

Celgene makes two arguments with respect to Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq.*, (herein referred to as "Pennsylvania UTPCPL").   First, Celgene argues that the statute enumerates 20 specific "unfair methods of competition," none of which apply here.[21]   Second, Defendant argues that Pennsylvania UTPCPL "requires the plaintiff to establish 'the traditional common law elements of reliance and causation'."[22]

The Eastern District of Pennsylvania has found that allegations of anticompetitive conduct can be sufficient to state a claim under the UTPCPL. *Sheet Metal Workers*, 737 F. Supp. 2d at 421 (finding that plaintiffs adequately pleaded deceptive conduct by "alleg[ing] that [defendant] filed sham patent infringement lawsuits knowing that they would not be successful, in an attempt to

---

[21] (Supplemental Motion to Dismiss at 17.)
[22] (*Id.*)

retain their monopoly on the Wellbutrin SR market").  Moreover, in denying the

defendant's motion to dismiss, the Eastern District of Pennsylvania court wrote:

> Although past courts have ruled that the PUTPCPL requires a plaintiff
> to allege common law fraud, *see Yeager's Fuel, Inc. v. Pennsylvania
> Power & Light Co.*, 953 F. Supp. 617, 668 (E.D.Pa. 1997), recent
> courts in this district have concluded that this interpretation is no
> longer sound. More importantly, these courts have ruled that the
> PUTPCPL has a wider scope than its language might suggest. As
> noted by Judge McLaughlin in *Flores v. Shapiro & Kreisman*, 246 F.
> Supp. 2d 427, 432 (E.D.Pa. 2002), the version of the catchall
> provision of the PUTPCPL in place prior to 1996 prohibited only
> "fraudulent" conduct. *See* 73 Pa. Stat. Ann. § 201-2(4)(xxi)
> (Historical Statutory Notes). The act was then amended to prohibit
> both fraudulent and "deceptive" conduct. *Id.* I agree with Judge
> McLaughlin that *In re Patterson*, 263 B.R. 82, 92-93 (Bankr. E.D.Pa.
> 2001) is persuasive in its reasoning that the addition of the word
> "deceptive," along with the Pennsylvania Supreme Court's broad
> construction of the PUTPCPL as a remedial law designed to address
> both fraudulent and unfair business practices, renders previous
> interpretations requiring plaintiffs to allege common law fraud
> erroneous....

*Id.* at 422 (denying defendant's motion to dismiss plaintiff welfare benefit plan's

UTPCPL claim where the plan "purchased or reimbursed their plan members for

purchases of Wellbutrin SR for the members' personal use").  Celgene's motion to

dismiss Providence's claim under the Pennsylvania UTPCPL should be denied.

C.  Celgene's Motion to Dismiss Providence's Unjust Enrichment Claims
    Under Florida, North Carolina and Pennsylvania Law Should Be Denied.

Celgene's Motion to Dismiss Providence's unjust enrichment claims under

Florida, North Carolina and Pennsylvania law should be denied.  In its complaint,

Providence specifically alleged that Celgene received a benefit in the nature of

monopoly profits received from the sale of Thalomid and Revlimid; the benefits received and retained by Celgene rightfully belong to Providence and other class members; and it would be inequitable to allow Celgene to retain these ill-gotten monopoly profits.  *See American Federation*, 2010 U.S. Dist. LEXIS 23181, *25 (denying motion to dismiss plaintiffs' unjust enrichment claims on the where plaintiffs paid for or reimbursed the purchase costs of the product on behalf of their members.)  *See also* Restatement of Restitution § 1 (1937).

Moreover, as detailed herein and in IUB's opposition, Celgene's argument that Providence's unjust enrichment claims fail because its antitrust claims fail is a nonstarter.  First, Providence has sufficiently stated its antitrust claims.  Second, at the motion to dismiss stage, unjust enrichment claims are viable regardless of the viability of the applicable state antitrust claims. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 679 (S.D. Fla. 2004).

Celgene further argues that a claim for unjust enrichment under Pennsylvania law fails because Pennsylvania does not provide for indirect purchaser standing (and, indeed, Pennsylvania does not even have an antitrust statute).  However, this argument has been expressly rejected by the courts.  *See e.g., Sheet Metal Workers*, 737 F. Supp. 2d at 443 (denying motion to dismiss the Pennsylvania unjust enrichment claim and finding that "it does not subvert Pennsylvania's expressed legislative intent to allow their unjust enrichment claim

to proceed...").  *See also*, *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 439-540 (E.D.Pa. 2010).

Celgene also takes aim at Providence's claims for unjust enrichment under Florida and North Carolina law[23], arguing that Providence's claims should be dismissed because it did not confer a direct benefit on Celgene.  However, in cases that are factually analogous to those alleged by Providence, courts have refused to dismiss indirect purchasers' unjust enrichment claims. For example, in *In re DDAVP*, the Court held that:

> at this stage of the case, I agree with Plaintiffs – that is, that despite not having direct dealings (contractual or otherwise) with Defendants, Plaintiffs plausibly conferred some benefit on Defendants, albeit indirectly, by purchasing DDAVP at elevated prices, and Defendants profited from the individual demand of the DDAVP consumers, the ultimate victims of Defendants' unlawful conduct.

903 F. Supp. 2d at 234.  Moreover, whether Celgene "did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage...".  *Wilson*, 2015 U.S. Dist. LEXIS 8315, *66; *accord In re Canon Cameras Litig.*, No. 05-cv-7233, 2006 U.S. Dist. LEXIS 43233, *7 (S.D.N.Y. June 21, 2006) ("[W]hether defendant received any benefit from plaintiffs' camera purchases is a question of fact not properly resolved on a motion

---

[23] Though Celgene asserts that Providence's North Carolina unjust enrichment claim should be dismissed, it makes no substantive argument as to Providence's claim. (Supplemental Motion to Dismiss at 24.) For this reason, Celgene's motion to dismiss Providence's unjust enrichment claim under North Carolina law should be dismissed.

to dismiss.").  Similarly, in evaluating North Carolina law, the Eastern District of Pennsylvania found that "plaintiffs' payment of higher prices for a product as a result of unlawful conduct on the part of the defendant is sufficient to state an unjust enrichment claim under North Carolina law." *Sheet Metal Workers*, 737 F. Supp. 2d at 442 (denying Glaxosmithkline's motion to dismiss indirect purchaser's North Carolina unjust enrichment claim); *see also, In re TFT-LCD*, 599 F. Supp. 2d at 1190.

Providence respectfully submits it has sufficiently alleged its state law claims for unjust enrichment.  Therefore, Celgene's motion to dismiss Providence's Florida, Pennsylvania and North Carolina unjust enrichment claims should be denied. Any motion to dismiss Celgene's unjust enrichment claims under Kansas, Massachusetts or New Jersey law should also be dismissed as Celgene failed to present any relevant argument or legal analysis in its brief, instead relegating their treatment of these claims to a chart appended thereto which contained no analysis or citations to law.

## CONCLUSION

For the foregoing reasons, Providence respectfully submits that Celgene's Supplemental Motion to Dismiss should be denied in its entirety.

Dated:  May 4, 2015                    GARDY & NOTIS, LLP


                                       By:   s/ Jennifer Sarnelli
                                       Jennifer Sarnelli
                                       James S. Notis
                                       560 Sylvan Avenue
                                       Englewood Cliffs, New Jersey 07632
                                       Telephone: (201) 567-7377
                                       Facsimile: (201) 567-7337
                                       jsarnelli@gardylaw.com
                                       jnotis@gardylaw.com

                                       Jeffrey C. Block
                                       Whitney E. Street
                                       Erica G. Langsen
                                       BLOCK & LEVITON LLP
                                       155 Federal Street, Suite 400
                                       Boston, MA 02110
                                       Telephone: (617) 398-5600
                                       Facsimile: (617) 507-6020
                                       jblock@blockesq.com
                                       wstreet@blockesq.com
                                       elangsen@blockesq.com

                                       Lesley E. Weaver
                                       BLOCK & LEVITON LLP
                                       492 Ninth Street, Suite 260
                                       Oakland, CA 94607
                                       Telephone:  (415) 968-8999
                                       Facsimile:  (617) 507-6020
                                       lweaver@blockesq.com