```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

INTERNATIONAL UNION OF             .
BRICKLAYERS AND ALLIED CRAFT       .
WORKERS LOCAL 1 HEALTH FUND,       . Case No. 2:15-cv-01605
                                   .
        Plaintiff,                 . Newark, New Jersey
                                   . May 7, 2019
vs.                                .
                                   .
CELGENE CORPORATION,               .
                                   .
        Defendant.                 .
_____    .

In re Thalomid and Revlimid        . Case No. 2:14-cv-06997
Antitrust Litigation C.A.          .
_____    .


                  TRANSCRIPT OF TELECONFERENCE
             BEFORE THE HONORABLE MICHAEL A. HAMMER
                 UNITED STATES MAGISTRATE JUDGE
```

Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1  (APPEARANCES continued)

 2
    For the Plaintiffs:    MELINDA R. COOLIDGE, ESQ.
 3                         Hausfeld
                           1700 K Street, NW
 4                         Suite 650
                           Washington, DC 20006
 5                         (202) 540-7200
                           Mcoolidge@hausfeld.com
 6
                           KATIE R. BERAN, ESQ.
 7                         Hausfeld
                           325 Chestnut Street
 8                         Suite 900
                           Philadelphia, PA 19106
 9                         (215) 985-3270
                           Kberan@hausfeld.com
10
                           TAMARA FREILICH, ESQ.
11                         Hausfeld
                           325 Chestnut Street
12                         Suite 900
                           Philadelphia, PA 19106
13                         (215) 985-3270
                           Tfreilich@hausfeld.com
14
                           DANIEL B. REHNS, ESQ.
15                         Hach Rose Schirripa & Cheverie, LLP
                           185 Madison Avenue, 14th Floor
16                         New York, NY 10016
                           (212) 213-9311
17                         Drehns@hrsclaw.com

18                         FRANK ROCCO SCHIRRIPA, ESQ.
                           Hach Rose Schirripa & Cheverie LLP
19                         185 Madison Avenue
                           14th Floor
20                         New York, NY 10016
                           (212) 213-8311
21                         Fschirripa@hrsclaw.com

22                         KATHRYN A. HETTLER, ESQ.
                           Hach Rose Schirripa & Cheverie LLP
23                         185 Madison Avenue
                           14th Floor
24                         New York, NY 10016
                           (212) 213-8311
25                         Khettler@hrsclaw.com
```

```
 1   (APPEARANCES continued)

 2
     For the Console         JENNIFER SARNELLI, ESQ.
 3   Plaintiff City of       Gardy & Notis, LLP
     Providence:             560 Sylvan Avenue
 4                           Englewood Cliffs, NJ 07632
                             (201) 567-7377
 5                           jsarnelli@Gardylaw.com

 6                           WHITNEY E. STREET, ESQ.
                             Block & Leviton LLP
 7                           155 Federal Street, Suite 400 Boston,
                             Massachusetts 02110
 8                           (617) 398-5600
                             Whitney@blockesq.com
 9
                             STEPHEN TETI, ESQ.
10                           Block & Leviton LLP
                             155 Federal Street, Suite 400 Boston,
11                           Massachusetts 02110
                             (617) 398-5613
12                           Stephen@blockesq.com

13
     For the Defendant:      JOSEPH A. FISCHETTI, ESQ.
14                           Lowenstein Sandler, PC
                             One Lowenstein Drive
15                           Roseland, New Jersey 07068
                             (973) 422-6506
16                           jfischetti@lowenstein.com

17                           BENJAMIN M. GREENBLUM, ESQ.
                             Williams & Connolly LLP
18                           725 Twelfth Street, N.W.
                             Washington D.C. 20005
19                           (202) 434-5919
                             Bgreenblum@wc.com
20
                             CAROL J. PRUSKI, ESQ.
21                           Williams & Connolly LLP
                             725 Twelfth Street, N.W.
22                           Washington D.C. 20005
                             (202) 434-5930
23                           Cpruski@wc.com

24

25
```

```
 1   (APPEARANCES continued)

 2
     For the Defendant:     JOHN E. SCHMIDTLEIN, ESQ.
 3                          Williams & Connolly LLP
                            725 Twelfth Street, N.W.
 4                          Washington D.C. 20005
                            (202) 434-5901
 5                          Jschmidtlein@wc.com

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Commencement of proceedings at 3:30 P.M.)

2

3        THE COURT: All right. Counsel, we are on the

4   record in the *In re* Thalomid and Revlimid Antitrust

5   Litigation, Civil No. 14-6997.

6        Can I have appearances, please, beginning with

7   plaintiff's counsel.

8      (Plaintiff appearances were given: Whitney Street,

9   Stephen Teti, Jennifer Sarnelli, Melinda Coolidge, Katie

10  Beran, Tamara Freilich, Daniel Rehns, Frank Schirripa.)

11       THE COURT: All right. I'm going to infer that is

12  everybody for the plaintiffs.

13       And on the defense side?

14       (Defense appearances were given: John Schmidtlein,

15  Benjamin Greenblum, C.J. Pruski, Joseph Fischetti.)

16       THE COURT: All right. Good afternoon, all

17  counsel.

18       So what I'm working off of are -- well, really the

19  amended scheduling order that we entered back in December,

20  had the deadlines for class certification. I saw that that

21  is now briefed and awaiting the decision by Judge Arleo.

22       I believe, following up, then, on the joint status

23  report filed on February 21st of this year, the proposal is

24  essentially to have all -- well, once, rather, there's a

25  ruling on the pending motion for class certification, then

1    dispositive motions following the Court's ruling on the class
2    certification.
3            Is that right?
4             MS. BERAN:  Good afternoon, Your Honor.  This is
5    Katie Beran.
6            Yes, that is correct.  And for the most part, the
7    case has been very quiet.  But recently on April 26th, we
8    reached out to Celgene about its duty to supplement certain
9    discovery requests.  And we just heard back late last night,
10   and we're still evaluating Celgene's responses.
11           But we're happy to preview that dispute for you
12   now, if it would productive.
13           THE COURT:  A dispute over -- what is this now?
14           MS. BERAN:  Celgene recently made relevant
15   documents and information available to third parties, and
16   that triggered a duty to supplement under Rule 26(e).  And we
17   reached out to Celgene about its duty to supplement and just
18   heard back late last night.  And so now if you're interested
19   in hearing about it, we'd be happy to tell you more about
20   that dispute.
21           THE COURT:  I don't know whether I'm interested.
22           You can elaborate, if you don't mind.
23           MS. BERAN:  Sure.  Well, there's -- so there's two
24   different categories of documents.  First, Celgene made
25   documents available to a third party BMS as part of its due

1  diligence process for a proposed merger.  And, second,
2  Celgene recently settled its patent suit against a potential
3  generic competitor, Alvogen, and we requested that settlement
4  agreement.
5            So regarding the first category of documents that
6  Celgene made available to BMS, in a letter to the
7  shareholders, BMS -- that as part of its due diligence
8  process, its management team had -- access to nonpublic
9  information regarding its product -- pipeline and
10 specifically regarding Revlimid.  And it specifically says
11 that there were 40 business leaders and their teams were
12 involved in this process.
13           And so now that we know that Celgene has made these
14 documents available to a third party, we have asked them to
15 supplement its prior productions with this very narrow subset
16 of documents.  And our position is that there's really no
17 burden argument here -- were documents that were already
18 collected.  And there's no question that documents that are
19 about Celgene's pipeline and sales forecasting for Revlimid
20 go to the heart of this case about generic -- they are also
21 directly responsive to a number of previously propounded
22 document requests, and the duty to supplement is ongoing.
23           Regarding the second category of documents, again,
24 it's a very narrow request.  We are simply asking for a
25 settlement agreement between the defendant in this case and a

1  potential generic competitor that we allege would have come

2  to market sooner but for Celgene's ongoing anticompetitive

3  conduct. And we have allegations in this case by our experts

4  about this specific potential generic competitor. And our

5  class periods all run through the present. We have an

6  injunctive relief claim. And Celgene -- and trial is still

7  ahead of us.

8  So as long as Celgene continues to engage in this

9  sort of anticompetitive conduct, we're entitled to documents

10 of this sort.

11 I'm happy to expand further if that's --

12 THE COURT: Well, no, but have you reached out to

13 the generic -- in other words, the other party to the

14 settlement agreement to determine whether they would object

15 to release of that settlement agreement?

16 MS. BERAN: We have not yet at this point because

17 so far Celgene has itself objected. But we'd certainly be

18 open to doing that. And we've received similar settlement

19 agreements in this case, both for Natco and for -- and we

20 have a protective order.

21 THE COURT: Well -- all right. So what's Celgene's

22 position on this?

23 MR. SCHMIDTLEIN: Thank you, Your Honor. This is

24 John Schmidtlein.

25 As to the supposed duty to supplement, we very much

1  disagree with the plaintiff's position on that.  We're not --
2  the notion that there would be a data room and that there
3  would be information, sort of new information or sort of
4  current information about sort of ongoing market
5  developments, post -- you know, we are now one year --
6  roughly a year after the close of fact discovery in this
7  case, the close of expert discovery in this case -- the
8  notion that we are obliged to produce new documents about
9  sort of future forecasting of sales is, candidly, I think,
10 ridiculous.  These types of -- in every single antitrust
11 case, there is a fact discovery cut-off, and, of course,
12 there will be in documents that could potentially be created
13 after the close of fact discovery.  I suppose we could go
14 back to every named plaintiff in this case and ask them to
15 supplement every single document request that we served on
16 them.
17          There's nothing that is germane, for instance, in
18 terms of future forecasting when the class period in this
19 case has already been -- has already been set.  You have to
20 draw a line.  And the idea that they can come back and just
21 ask us for, you know, kind of a refresh a year after the
22 close of fact discovery is not supported, I think, by -- by
23 the law or by -- or by the rules of discovery.
24          On the issue of the -- the Alvogen settlement, this
25 is a settlement that occurred recently.  It is a confidential

1  settlement.  The terms of the settlement do not permit us to
2  reveal all of the details per our agreement with Alvogen.
3  But a press release with a high-level description of the
4  settlement was issued.  And it makes clear that this
5  settlement will provide for a generic -- a license for
6  generic entry after the date provided for in the Natco
7  settlement, which is March 2022.  And it makes clear that
8  this will not result in any earlier generic entry during the
9  class period in this case.  And so, therefore, we don't see
10 it having any bearing on the already completed economic
11 analyses, any of the opinions.
12         And also I think it's important to note that the
13 plaintiffs in this case have never alleged that but for
14 Celgene's supposed anticompetitive conduct, Alvogen would
15 have come to market in an earlier time frame that would have
16 yielded some sort of damages in this case.  They are not one
17 of the generic competitors that the plaintiffs have
18 identified would have entered during the class period but for
19 the supposed alleged anticompetitive conduct.  So the notion
20 that somehow -- somehow this settlement has an impact on the
21 damages claim in this case is incorrect.
22         And in light of the fact that we settled our
23 litigation with them and they have a license to enter years
24 into the future and the lawsuit is over, I can't imagine what
25 injunctive relief claim they could possibly have pertaining

1    to that settlement agreement.  That settlement agreement is
2    done.  The ink is dry.  And we had provisions there is that
3    will provide them for a pathway to market years in the
4    future.  There's no injunction that the plaintiffs can get in
5    this case that's going to somehow result in Alvogen being
6    permitted to come to market sooner.
7              THE COURT:  Right.
8              All right.
9              MS. BERAN:  Your Honor, may I respond to that?
10             THE COURT:  Yeah, although, let me be clear, I am
11   not going to -- I'm certainly not going to resolve this
12   today.  I've gotten a preview now from both sides as to what
13   the issues are.
14             It sounds to me -- although initially this was
15   introduced as the parties still are essentially meeting and
16   conferring -- that the prospects for a resolution of this --
17   and I am usually the last judge to, you know, try and throw
18   water on the prospect of the parties resolving this short of
19   Court intervention -- I'm not getting the sense that that's
20   likely here.
21             Is that fair to say?  If I'm wrong, I'm very happy
22   to be told I'm wrong.
23             MS. BERAN:  From plaintiff's perspective, this is
24   such a narrow and discrete set of documents; like, for
25   example, with the settlement agreement, we're talking about

```
 1  one document.  So -- to the -- that we wouldn't be able to
 2  reach an agreement, but I understand, based on what
 3  Mr. Schmidtlein is saying, that perhaps that's not possible
 4  here.
 5              THE COURT:  So to move this along, why don't you
 6  folks send me a joint letter that sets forth your respective
 7  positions on each issue -- well, you know what I'll do
 8  actually?  Yeah, let's do that.  That way I know once I have
 9  the -- the joint letter, I can resolve it.  Joint letter.
10  Keep the discussion -- I don't think this is necessarily that
11  complicated.  If you folks disagree, tell me.  Each side give
12  me three double- -- not more than three double-spaced pages
13  on each of the two issues; so for a total of six
14  double-spaced pages per side, max.
15              Okay?
16              MR. SCHMIDTLEIN:  Thank you, Your Honor.
17              MS. BERAN:  Yes, thank you, Your Honor.
18              THE COURT:  Does anybody believe that that's not --
19  yeah, does anybody believe that that's not enough room to
20  give me your arguments?
21              MS. BERAN:  No, I think that's sufficient.
22              THE COURT:  Okay.  When do you folks think you can
23  get that to me?  And understand the motion for class
24  certification is out there.  I've got no shortage of other
25  cases calling for my attention.  So I'm happy to give you
```

```
 1  folks the time that you need to get this to me, especially,
 2  if you think there's any progress to be made at all in terms
 3  of narrowing this down or resolving it by meet-and-confer.
 4            MS. BERAN:  Would two weeks be okay?
 5            THE COURT:  I'm happy with two weeks.
 6            Mr. Schmidtlein?
 7            MR. SCHMIDTLEIN:  Yes, that's fine, Your Honor.
 8  Thank you.
 9            THE COURT:  Okay.  So by May 21, then.
10            MS. BERAN:  Got it.  Thank you, Your Honor.
11            THE COURT:  All right.  Anything else we need to
12  take up today?  Otherwise, what we envision, I think, is that
13  you folks, as you had said in the joint status report, were
14  going to give me a proposed summary judgment briefing
15  schedule within 14 days of the ruling on the renewed class
16  motion -- class certification motion.  Right?
17            MS. BERAN:  That's correct.
18            MR. SCHMIDTLEIN:  That's correct.
19            MS. BERAN:  Plaintiff has actually already proposed
20  a briefing schedule just so that things can move along on
21  an -- basis, and  we're waiting to hear back from Celgene,
22  and we'll be prepared to report back to the Court within 14
23  days of the Court's --
24            THE COURT:  Okay.  All right.  Anything else we
25  need to take up today?
```

1     MS. BERAN:  Not from the plaintiffs.
2     MR. SCHMIDTLEIN:  That's it for defendants,
3 Your Honor.
4     THE COURT:  All right.  Have a good afternoon,
5 everyone.  Thank you.
6     UNIDENTIFIED SPEAKERS:  Thank you.
7      (Conclusion of proceedings at 3:44 P.M.)

```
 1                        Certification
 2       I, SARA L. KERN, Transcriptionist, do hereby certify
 3   that the 15 pages contained herein constitute a full, true,
 4   and accurate transcript from the official electronic
 5   recording of the proceedings had in the above-entitled
 6   matter; that research was performed on the spelling of proper
 7   names and utilizing the information provided, but that in
 8   many cases the spellings were educated guesses; that the
 9   transcript was prepared by me or under my direction and was
10   done to the best of my skill and ability.
11       I further certify that I am in no way related to any of
12   the parties hereto nor am I in any way interested in the
13   outcome hereof.
14
15
16
17
18   s/ Sara L. Kern                         9th of May, 2019
         _____      _____
19       Signature of Approved Transcriber           Date
20
21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080
24
25
```